## Case No. 15,246.

### UNITED STATES v. GRAHAM.

[Hoff. Op. 60; Hoff. Dec. 67.]

District Court, N. D. California. Oct. 31, 1859.

MEXICAN LAND GRANTS—LOCATION—EXCEPTIONS TO SURVEY.

[A Spanish land grant stated that the land granted was longitudinally one league and latitudinally one-half league, a little more or less. Under the grant a formal judicial measurement was made and possession given, the record of which was attached to the expediente. The act of possession recited that the measurement was commenced from south to north, in which direction they measured 5,000 varas, and placed as a landmark a certain water mill on the south, from whence, west to east. they measured 3,000 varas. where a landmark was set. It further recited that the grantee took possession "for one league longitudinally and 3,000 varas latitudinally." Two of the attesting witnesses to this proceeding testified that only two lines were run, and one of the witnesses stated the commencement and termination of each of the lines, and identified a pine tree as the point of beginning of the east and west line, and also stated the point of beginning of the north and south line. The magistrate testified to the running of four lines, in contradiction of the act of possession signed by him. The extension of the grant to the lines sworn to by such officer would disregard entirely the measurements provided for and referred to in the proceeding, and would include a much greater extent of land than called for in the grant or mentioned in the act of possession. Such grant will also include densely timbered lands almost valueless at the time of the grant, and would exclude valley lands where the greater part of the improvements were situated at the time of the grant. These timber lands had become of considerable value at the time of the suit. Held, that the boundaries of the survey should be located in accordance with the testimony of the attesting witnesses.]

[This was a claim by Isaac Graham and others for the rancho of Zayante, one league by one half league, in Santa Cruz county, granted April 22, 1841, by Juan B. Alvarado to Juan José Crisostomo Majors. Claim filed June 4, 1852, confirmed by the commission June 26, 1855, and by the district court. Case unreported. It is now heard upon exceptions to the survey.]

HOFFMAN, District Judge. This case comes up on exceptions filed to the survey, both by the United States and the claimant. In the grant the land is described as "that formerly occupied by Mr. Moss, known by the name of 'Zayante,' bordering on the village of Branciforte and the mission of Santa Cruz." The third condition states that the land of which mention is made is longitudinally one league, and latitudinally one-half league, a little more or less, as explained by the diseño attached to the expediente. Under this grant a formal judicial measurement was made, and possession was given, the record of which is found attached to the expediente in the case. The diseño is not found in the expediente. but a map is produced which the officer identifies as that according to which he gave the possession. This diseño, in a rude but intelligible man-

ner. indicates the tract of country out of which the quantity granted was to be taken; but no boundaries are delineated, nor is the village of Branciforte or the mission of Santa Cruz laid down upon it. The act of possession, therefore, furnishes the only means of ascertaining the true location of the small tract which was granted. The record of that proceeding, after reciting the usual formal preliminaries, sets forth "that the measurement was commenced, holding the cord from south to north, in which direction they measured 5,000 varas; and placed as a landmark (mohonera) the water mill on the south, from the river San Lorenzo, where the monte begins, from whence from west to east 3,000 varas (including the potreros on the other side of the river), where they set a pine tree for a landmark, giving to the land the form and dimensions shown in the diseño,—the said measures declaring that the land was 'un sitio de gañado mayor.' At the aforesaid rancho, and on the same day, the citizen Juan José Majors, accompanied by the judge of the peace and the attesting witnesses, said that the land of the rancho having been surveyed as stated in the foregoing proceedings, he took bodily and real possession of the said sitio de gañado mayor, for one league longitudinally and 3,000 varas latitudinally as belonging to him, being the same expressed in the title," etc. The record then states that the grantee "entered on the land, pulled up grass and shrubs, and cast stones to the four winds, and performed other ceremonies and acts of possession, in consequence of which he said that he took the said land."

It will be observed that the language of this record, especially in the important part which describes the measurements, is somewhat obscure, owing, probably, to the fact that Bolcoff, the magistrate by whom the possession was given, was a Russian, and imperfectly acquainted with the Spanish. It is to be observed, too, that the diseño produced is not attached to the expediente, nor found on the record of the judicial measurement. Its identity with that formerly attached to the expediente, and used when the possession was given, is sworn to by Bolcoff, whose testimony, we shall hereafter see, is not wholly reliable; and if the statement in the record, that there was "given to the land the form and dimensions shown in the diseño," or, more correctly translated, "leaving the diseño drawn or sketched (dibujado) in the same form as the land was measured," means that the land as measured was delineated on the diseño, then it would seem that the diseño produced is not the one marked on that occasion, for no such lines are upon it. It is also to be observed that the original expediente is not put in evidence in the case, but it is stated in the brief on the part of the United States that by that expediente it appears that the land was first granted to Joaquin Buelna by Figueroa in

1834; that it was denounced by and granted to Moss in 1839, and was finally petitioned for and granted to Majors in 1841. In the briefs filed on the part of the claimants, these facts are not denied, and it is testified by José Bolcoff that he gave three judicial possessions of the land,—the first to Buelna, the second to Moss, and the third to Majors. As the land granted to the latter is described in the grant as that formerly occupied by Moss, it would seem that the grant and judicial possession given to him would furnish important evidence to remove any doubts as to the location of the tract intended to be granted to Majors. If, therefore, I considered it necessary, to enable me to arrive at a satisfactory determination of the questions now presented, I should not hesitate to direct the expediente to be filed. But it has appeared to me that, notwithstanding the obscurities alluded to, the record of judicial possession discloses the location and dimensions of the tract whereof Majors was put in possession with sufficient certainty to enable me to determine the present controversy.

It appears, from the record, that only two lines were measured, viz. one longitudinally from south to north, 5,000 varas in length, and one latitudinally from west to east, 3,000 varas in length. The commencement of the north and south line is not stated, but its termination, viz. a water mill, is distinctly mentioned as a boundary mark established by the judicial officer. This mill is marked on the diseño, and its position is undisputed. The latitudinal line is described in the record as commencing where the monte begins, —beyond the river San Lorenzo,—which is probably the meaning of the words, "desde del Rio de San Lorenzo." But, at all events, it is clearly described as running from where the monte begins, from west to east 3,000 varas, to a pine tree which was established as a mohonero, and including the potreros on the other side of the San Lorenzo. There can, therefore, be no doubt that the land of which possession was given was a tract 5,000 varas long and 3,000 varas wide, on the northern boundary of which was the mill, and on the eastern a pine tree. Two of the assisting witnesses have testified in the case. Both depose that only two lines were run, and Perez states, with precision, and in entire conformity to the act of possession, the commencement and termination of each of those lines. He identifies a pine tree on the edge of the monte as the point of beginning of the east and west line, and also the pine tree which, as stated in the act of possession, was established as a boundary mark at its termination. He also states the point of beginning of the north and south line, and assigns to it a position on the map corresponding nearly exactly with that of the point at which Bolcoff swears he commenced to run the north and south line.

To meet this testimony, and to establish, if possible, that the rancho was surveyed so as to include on the west side the valuable timber lands, which are the real subjects of dispute; the claimants have examined José Bolcoff, the magistrate who gave the possession. This witness states that he marked a large pine tree as the commencement of the line between the rancho and that of San Agustin; "that this pine tree is situated near the center of the largest cluster or grove of trees represented on the map (the diseño); that the boundary line runs from thence north-northwest, to the mill, represented on said map by a cross and circle, near which, and to the north of it, an oak tree was marked as a corner; thence he ran the line southwest, including the corral viejo, and crossing the arroyo de San Lorenzo, to a point on the sierra, where a large redwood tree was marked as a corner; thence south-southeast, a straight line to another redwood tree, marked as a corner; thence a straight line north-northeast to the place of beginning." But it is clear, from the evidence, that the four lines thus described by Bolcoff were not run by him. The two witnesses who assisted at the measurement testify that only two lines were run,—one for the length, and the other for the width,—and their statement is corroborated by Majors, the grantee, who describes the lines run in nearly the same terms as Perez, except that he thinks the latitudinal line was 3,700 varas long. But, as to the fact that only two lines were run, and the points at which each begun and ended, the witnesses are entirely agreed. But the testimony of Bolcoff is still more emphatically contradicted by the act of possession, signed by himself, and produced by the claimants. In that record it is distinctly stated that two lines were run, one 5,000 varas long to the molino or mill, and the other 3,000 varas long, from the beginning of the monte to a marked pine tree, and the dimensions of the tract are again stated in the subsequent part of the record, which describes the entry of the grantee on the land.

If, then, it were legally permissible to contradict by parol a record of this description, and to show that the tract whereof possession was given was different and much larger than that described in the act of possession, the evidence in this case is insufficient to raise even a doubt on the subject. The claimant himself seems to be aware that the measurement, as stated by Bolcoff, could confer no rights to all the land included within it, but that the dimensions of the tract must be as stated in the grant (viz. a league by half a league, more or less), or as stated in the act of possession (5,000 varas by 3,000 varas). The survey for which he contends embraces only a tract of that extent, and it is made to extend to and include the timber lands on the west only by neglecting entirely the call for the molino, which Bolcoff admits he marked as a corner, and which is stated as a boundary mark in the act of possession; and by adopting as the controlling bound-

aries lines of which no mention is made in the act of possession, the location of which rests on the testimony of Bolcoff alone, but which in fact were never run. That the molino or the oak tree near it was established as a corner on the northeast is clear from all the testimony. To the conclusive evidence afforded by the act of possession, and the testimony above referred to, may be added that of Weeks, who swears that he drew the diseño produced by the claimant; that "at the southeast corner of the rancho is the place called the 'rincon,' where we used to saw lumber. At the northeast corner is the place where we had a small grist mill. A line run from the rincon to the place where the grist mill was would be on the east side of the river San Lorenzo, and would be on the eastern side of the rancho." Wright, a surveyor, who ran out some of the lines of the rancho, at the request of the claimants, and assisted by Bolcoff, testifies that they started at the place of beginning pointed out by the latter, and which seems to be the same as that mentioned by Perez as the commencement of the south and north line; thence he ran to a pine tree, pointed out to him by Bolcoff, and which also corresponds with the pine tree mentioned by Perez, as the termination of the west and east line; and thence to an oak which had the appearance of having been marked, at the root of which was a stone, which Bolcoff said was placed there by his order. "This spot is indicated as a corner on the map, and is near the point marked 'Molino.' "

On the claimants' own showing, as well as from all the testimony in the case, it is clear that the eastern boundary of the land whereof the grantee received the possession, was a line drawn from the oak tree near the molino to the pine tree mentioned in the act of possession as the termination of the east and west line, and identified by Perez and Wright. If, then, the rancho extends to this line on the eastward, it cannot also extend on the west to the crest of the hills without disregarding entirely the measurement of the line run for width by the judicial officer, nor without including in the survey a much greater extent of land than is called for in the grant or mentioned in the act of possession. We have already seen that the crest of the hills on the west is nowhere mentioned as a boundary, either in the grant or the act of possession; nor have I been able to discover on what ground it is claimed that that line should form the western boundary, unless it be the statement of Majors. This witness testifies that, "after the measurement was made, Bolcoff waived his hand around, saying: 'I give you possession of all the land embraced within the hills all around.' " "That," the witness adds, "would embrace eight or ten leagues of land."

In the second deposition taken, after the return of the survey to this court, the same witness states that "Bolcoff raised his hands, and said he gave possession to the tops of the hills all around." The difference between these two statements is of some importance, for "the lands embraced within the hills all around" might very reasonably be deemed to be bounded by their base and not by their crest. But both of these statements are contradicted by the act of possession. That record, as has so often been mentioned, states explicitly the longitudinal and latitudinal dimensions of the tract, and the boundary marks established, and states that the grantee took possession of a piece of land one league long by 3,000 varas wide. The expression "sitio de gañado mayor" is evidently used inaccurately, for the measurements previously recited and the words which immediately follow show what were the dimensions of the tract so denominated. The sentence reads: "The lands of the said rancho having been surveyed, as stated in the aforesaid proceedings, he (the grantee) said that he took bodily and real possession of the said sitio de gañado mayor, for one league longitudinally and 3,000 varas latitudinally."

There are some considerations of a more general nature which tend to confirm the conclusions drawn from the terms of the act of possession. The rancho was petitioned for and granted under the name of "Zayante." The tract delineated on the diseño is represented as lying on both sides of that stream, although the potreros on the west of the San Lorenzo are also laid down. But the tract, as located under the survey the court is asked to adopt, would lie almost entirely to the west of the Zayante, and would be divided nearly in the middle by the San Lorenzo. Had such been the situation of the land solicited, it is natural to suppose it would have been called "San Lorenzo" and not "Zayante." Such a location would, moreover, exclude the principal portion, not only of the tract delineated on the diseño, but of the buildings and improvements represented upon it, especially those at the southeastern corner, and the molino, or mill, on the northeast. Again, the rancho, as held by the first grantee, Buelna, is stated by the latter to have been bounded on the west by the San Lorenzo. Although, when the judicial possession was given to Majors, the subsequent grantee, this boundary was not observed, yet the distance to which it was to extend beyond the San Lorenzo was accurately determined, and a tree was marked at the western end of the latitudinal line, the rancho remaining as before,—principally located on the west of that stream. Again, it is unreasonable to suppose that, in 1841, the grantee would have desired more than one-third of a rancho which was only one league long by half a league, more or less, broad, to be located on the sides of a densely-timbered and almost valueless sierra, while valley lands, on the other side of a creek, from which the rancho derived its name, and where

a great part of his improvements were situated, was excluded.

On the whole, it appears to me that the survey should be made so as to embrace a tract of the average length of 5,000 varas and the average width of 3,000 varas; that the eastern line should be run from the tree near the molino, identified by the witnesses, to the pine tree mentioned in the act of possession, as a boundary mark at the end of the west and east line, and so far beyond said tree as is necessary to make the length of said line 5,000 varas; that the southern line should be run so as to pass through the point mentioned by Perez and Majors, and identified by Wright as the point of beginning of the longitudinal line; that the western line should pass through the point mentioned in the act of possession as the place where the monte begins, and identified by Perez and Wright; and that thence it should be run in a general northerly direction, and so as to include the potreros on the west side of the San Lorenzo, provided that, by so doing, the average width of the tract included between such western boundary and eastern boundary, hereinbefore described, shall not be greater than 3,000 varas.